UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-382-SDJ |
| | § | |
| BOULDEN, ET AL. | § | |

**ORDER**

This criminal case has been pending since December 10, 2020. The original ten-page Indictment named five defendants and contained three counts. (Dkt. #17). Now before the Court is the Fourth Superseding Indictment, filed on September 9, 2021, which includes 112 defendants, contains seven counts, and spans 104 pages. (Dkt. #1047). The Court is presented with the prospect of a "megatrial"—a process composed of many defendants charged with various, specific crimes, included in one or more counts of the Fourth Superseding Indictment. The Court has already granted a continuance in this matter, finding that this case is "unusual and complex." (Dkt. #1498 at 3). More information is needed for the Court to manage this case.

**I.**

Broadly speaking, the current indictment involves the export of over $100 million worth of stolen Apple and Samsung electronic products into so-called "grey markets" in Hong Kong and the United Arab Emirates (U.A.E.). In these grey markets the illegally obtained devices, avoiding formal distribution channels, are ultimately sold to end consumers in Hong Kong, the U.A.E., and other countries. The products include phones, tablets, laptops, smart watches, and other personal electronic devices. The Defendants include a range of individuals, some of whom

1

aggregated stolen electronic products for export to foreign import companies, some of whom stole electronics by robbing authorized distributor stores and holding their workers at gunpoint, and some of whom used several types of fraud to steal electronics.

Count One of the Fourth Superseding Indictment charges seventeen named defendants and seven unnamed individuals with conspiracy to interfere with interstate commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951(a) and 2. Count Two charges four of the defendants named in Count One with interference with commerce by robbery in violation of 18 U.S.C. §§ 1951(a) and 2. Count Three further charges three of those defendants with using, carrying, and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of, a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Count Four charges 107 defendants and three unnamed individuals with conspiracy to transport stolen property in interstate and foreign commerce and aiding and abetting in violation of 18 U.S.C. §§ 371, 2314, and 2. Counts Five and Six charge all but one of the Count Four defendants with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341 and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. Finally, Count Seven charges eighteen defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). To date, three defendants have pleaded guilty, and one has been dismissed from the case.

## II.

On its face, the indictment before the Court implicates the issues and concerns raised by a criminal "megatrial." In this regard, it is well-established that "the risk of prejudice to the entire criminal justice system increases incrementally with the number of defendants and the length of the trial." *United States v. Delatorre*, 522 F.Supp.2d 1034, 1050 (N.D. Ill. 2007). And, "[a]lthough judicial economy usually favors a joint trial of defendants who are jointly indicted . . . under unusual circumstances, a district court may order separate trials as an aspect of its inherent right and duty to manage its own calendar." *United States v. Jones*, No. 91–570, 1992 WL 78784, at *1 (E.D. Pa. Mar. 24, 1992) (quotation omitted).

The Federal Rules of Criminal Procedure provide the tools and guidance for the Court to manage a potential megatrial. Rule 14 provides that, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). Application of Rule 14 must be guided by the principles set out in Rule 2, which provides that the rules "are to be interpreted to provide for the just determination of every criminal proceeding," and that they shall be construed "to secure *simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay*." FED. R. CRIM. P. 2 (emphasis added).

The Court finds that this case specifically raises issues implicating Rule 14. Courts have identified a variety of Rule 14-related concerns arising from megatrials. Many of these concerns appear to be present in this case due to, among other things,

the complexity of the indictment and sheer number of defendants charged. *See United States v. Gallo*, 668 F.Supp. 736, 749 (E.D.N.Y. 1987) ("As the number of counts and defendants in an indictment increases, it is obvious that the resultant complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." (quotation omitted)). "Trials of such extensive scope and duration threaten the most basic goals of the federal criminal justice system: simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *Delatorre*, 522 F.Supp.2d at 1049 (quotation omitted) (finding severance necessary in case involving fourteen defendants).

In considering trial management under these circumstances, the Court must be mindful of the heavy burdens megatrials impose upon jurors, defendants, counsel, and the court. *See United States v. Ellender*, 947 F.2d 748, 754 (5th Cir. 1991) ("Exceedingly long trials impose substantial burdens on the trial court, attorneys, defendants, support personnel, and particularly on jurors."). Consistent with this consideration, the Court recognizes that, in some situations, the argument in favor of employing Rule 14 may turn on, or be bolstered by, the "physical limitations of the courthouse and the logistical difficulties of attempting to conduct a complex multi-defendant trial." *United States v. Gray*, 173 F. Supp. 2d 1, 7–8 (D.D.C. 2001); *see also, e.g., United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989) (listing factors to be considered in deciding whether to sever trials of alleged co-conspirators); *Gallo*, 668 F.Supp. at 748–61 (in a case involving a 14-defendant prosecution on a 22-count indictment, the court split the defendants into seven different trials).

## III.

With these considerations in mind, the Court **ORDERS** the United States to submit an estimate of (1) the time it reasonably anticipates it needs to try this case, (2) the number of witnesses that the Government expects to call, and (3) the approximate volume of the evidence the Government intends to introduce at trial.

The Court further **ORDERS** that the United States submit a brief addressing the question whether the Court should proceed, under Rule 14, to sever the Defendants in this case into smaller groups for separate trials or provide other relief under Rule 14. Assuming severance is appropriate, the United States should also address in its submission: (1) proposed groups of defendants to be severed for separate trials; and (2) a proposal for the timing and sequence of such separate trials. The United States must submit its brief by no later than **April 20, 2022**, and the brief shall be limited to no more than fifteen pages.

It is further **ORDERED** that any Defendant who wishes to file a response to the United States' brief must do so by no later than **April 25, 2022**. Defendants may file responses jointly, and they may join in other Defendants' responses. Any response brief shall be limited to no more than fifteen pages.

**So ORDERED and SIGNED this 6th day of April, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE